**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **THOMAS WAYNE MCCULLOUGH, JR.,** | § § § | |
| *Plaintiff,* | § § | **CIVIL NO.** **SA-18-CV-00128-ESC** |
| **vs.** | § § | |
| **NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY,** | § § § § | |
| *Defendant.* | § § | |

## ORDER

This order concerns Plaintiff's request for review of the administrative denial of his applications for Disability Insurance Benefits under Title II and Supplemental Security Income under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c). Having considered Plaintiff's Brief [#12], Defendant's Brief in Support of the Commissioner's Decision [#13], and Plaintiff's Reply [#14], as well as the Social Security Transcript [#9], the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, the Court concludes that the ALJ failed to properly evaluate whether Plaintiff's impairments met or equaled the listing for disorders of the spine, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A (West 2019). The Court also concludes that the ALJ erred in failing to fully develop the record by not requesting a medical source statement describing the types of work that Plaintiff is still capable of performing. Becase these errors were not harmless, the Court will **VACATE** the Commissioner's decision and **REMAND** this case for further administrative proceedings consistent with this opinion.

# I. Jurisdiction

This Court has jurisdiction to review a final decision of the Commissioner of Social Security ("the Commissioner") under 42 U.S.C. § 405(g). The undersigned has authority to enter this order based on the parties' consent to proceed before a United States magistrate judge [#5, #8].

# II. Factual and Procedural Background

Plaintiff Thomas Wayne McCullough, Jr. ("Plaintiff"), filed an application for Disability Insurance Benefits under Title II of the Act on April 15, 2015. (Tr. [#9] 191–97.) That same day, Plaintiff also filed an application for Supplemental Security Income under Title XVI of the Act. (Tr. 198–209.) In both applications, Plaintiff alleged disability beginning July 1, 2014. (Tr. 191, 198.) Plaintiff later amended the alleged onset date to October 15, 2015. (Tr. 58.) At the time of the amended alleged onset date, Plaintiff was a forty-year-old male with a high school education. (Tr. 229, 247.) Plaintiff has past relevant work ("PRW") as a truck driver, a roustabout, and a dishwasher. (Tr. 232.) The physical and mental conditions upon which Plaintiff based his initial applications include abdominal adhesions, a nearly severed left thumb, attention deficit hyperactivity disorder (ADHD), post-traumatic stress disorder (PTSD), a broken back, a fractured right hip, and a broken right eye socket. (Tr. 246.) Plaintiff's applications were denied initially on May 20, 2015, and denied again upon reconsideration on November 3, 2015. (Tr. 121–26, 128–31.)

Following the denial of his claims, Plaintiff requested an administrative hearing. (Tr. 134.) Plaintiff and his non-attorney representative attended the administrative hearing before Administrative Law Judge ("ALJ") Barbara Powell on February 27, 2017. (Tr. 35–72.) Plaintiff and Vocational Expert ("VE") Howard Marnan provided testimony at the hearing. (Tr. 37–70.)

The ALJ issued an unfavorable decision on June 28, 2017.  (Tr. 15–34.)  The ALJ found that Plaintiff met the insured status requirements of the Act, and applied the five-step sequential evaluation process established by the Social Security Administration ("the Administration") to determine whether an individual is disabled within the meaning of the Act.  (Tr. 20.)  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 15, 2015, the amended alleged onset date.  (Tr. 20.)  At step two, the ALJ found that Plaintiff had the following severe impairments: "anxiety-related disorders, depressive disorder, posttraumatic stress disorder (PTDS), bipolar disorder, attention deficit hyperactivity disorder (ADHD), sprains and strains – all types, degenerative disc disease of the cervical and lumbar spine, and obesity." (Tr. 20.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (Tr. 21.)

Before reaching step four of the analysis, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium worked as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c).  (Tr. 23.)  In making this determination, the ALJ believed that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the evidence" and that any limitations imposed by his impairments were adequately incorporated into the RFC finding.  (Tr. 26.)

At step four, the ALJ found that Plaintiff was unable to perform any of his PRW.  (Tr. 27.)  Finally, at step five, the ALJ considered Plaintiff's age, education, work experience, and RFC, as well as the testimony of the VE, and found that there were jobs in significant numbers in the national economy that he could perform.  (Tr. 27.)  The ALJ found that Plaintiff was capable of performing nine jobs that existed in significant numbers in the national economy: (1)

dishwasher, (2) drycleaner helper, (3) hand packager (medium, unskilled), (4) office helper, (5) unskilled gate guard, (6) night watchman, (7) document preparer, (8) unskilled clerical sorter, and (9) hand packager (sedentary, unskilled). (Tr. 28–29.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act, and therefore not entitled to receive Social Security benefits. (Tr. 29.)

Plaintiff requested review of the ALJ's decision, but his request for review was denied by the Social Security Appeals Council ("the Appeals Council") on December 11, 2017, leaving the ALJ's decision as the final decision of the Commissioner. (Tr. 1–6, 188–90.) On February 7, 2018, Plaintiff filed a motion to proceed *in forma pauperis* ("IFP") in this proceeding [#1] and attached his Complaint seeking judicial review of the Commissioner's final decision thereto [#1-1]. On February 8, 2018, the Court granted the motion to proceed IFP [#2], and the Complaint was filed [#3].

### III.  Governing Legal Standards

A.      **Standard of Review**

Judicial review of the denial of Social Security benefits is limited to a determination of "whether substantial evidence supports the final decision[1] and whether the Commissioner used the proper legal standards to evaluate the evidence." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *See Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a

---

[1] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

reasonable mind might accept as adequate to support a conclusion.'" *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

In applying the substantial evidence standard, this Court must "scrutinize the record to determine if, in fact, such evidence is present." *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). In evaluating whether there is substantial evidence of disability, this Court weighs four elements of proof: "(1) the objective medical facts; (2) the diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work experience." *Martinez v. Chater*, 64 F.2d 172, 174 (5th Cir. 1995). While the relevant evidence "must do more than create a suspicion of the existence of the fact to be established," a finding of "no substantial evidence" is appropriate "only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

In applying this standard, this Court is not permitted to re-weigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *See Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citing *Haywood*, 888 F.3d at 1466). Conflicts in the evidence are for the Commissioner, rather than the courts, to resolve. *See Martinez*, 64 F.3d at 174. But, while substantial deference is given to the Commissioner's findings of fact, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carr v. Apfel*, 133 F. Supp. 2d 476, 479 (N.D. Tex. 2001).

## B.    Entitlement to Benefits

An individual is considered disabled for purposes of the Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* § 1382c(a)(3)(D).  An individual is considered to be under a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  *Id.* § 1382c(a)(3)(B).

## C.    Evaluation Process and Burden of Proof

As noted above, the Administration uses a five-step sequential evaluation process to determine whether an individual is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  *See id.* § 404.1520(a)(4)(i).  "Substantial gainful activity" means "the performance of work activity involving significant physical or mental abilities for pay or profit."  *Newton v. Apfel*, 209 F.3d 448, 452–53 (5th Cir. 2000) (citing 20 C.F.R. §§ 404.1572(a)–(b)).  If the claimant engages in substantial work experience, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience.  *See* 20 C.F.R. § 416.924(b).  If the claimant is not engaging in substantial work experience, the analysis proceeds to the next step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." *See id.* § 404.1520(a)(4)(ii). An impairment or combination of impairments is considered severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *See id.* §§ 404.1520(c), 416.920(c). "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. *See* 20 C.F.R. § 404.1520(c). If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the next step.

At step three, the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment found in the Listing of Impairments ("the Listings"), a set of medical criteria found at 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant has an impairment or combination of impairments that meets or medically equals the criteria of a listing, and it has lasted or is expected to last for a continuous period of at least twelve months, the claimant is disabled. *See id.* §§ 404.1520(d), 416.909. If not, the analysis proceeds to the next step.

Before reaching step four of the five-step sequential evaluation process, however, the ALJ must first determine the claimant's RFC, which is the most that he can still do despite his limitations. *See id.* § 416.945(a)(1). The ALJ uses the RFC assessment at step four to determine if the claimant can do his PRW and at step five to determine if the claimant can adjust to any other work existing in the national economy. *See id.* §§ 404.1520(e), 416.920(e).

At step four, the ALJ reviews the RFC assessment and the demands of the claimant's PRW. *See id.* § 404.1520(f). The term "past relevant work" is defined as work that the claimant has done within the past fifteen years, that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. *See id.* § 404.1560(b)(1). If the claimant has the RFC to do his PRW, he is not disabled. *See id.* § 404.1560(3). If the claimant's impairment or combination of impairments preclude him from performing his PRW, the fifth and final step of the sequential evaluation process assesses the claimant's ability—given his residual capacities, age, education, and work experience—to do other work. *See id.* § 404.1520(g). If the claimant is able to do other work, he is not disabled. *Id.* If the claimant's impairment or combination of impairments precludes him from performing any other type of work, he will be found to be disabled. *Id.*

The claimant bears the burden of proof at the first four steps of the sequential evaluation process. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *See Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines found at 20 C.F.R. Pt. 404, Subpt. P, App. 2, expert vocational testimony, or other similar evidence. *See Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform that work. *See Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## IV. Analysis

Plaintiff raises three points of error in this appeal: (1) that the ALJ's step-three determination is erroneous because the ALJ failed to properly consider whether Plaintiff's impairments met the criteria of Listing 1.04A; (2) that the ALJ's RFC finding is not supported by substantial evidence because there is no opinion of record from any doctor or other medical provider detailing Plaintiff's physical limitations; and (3) that the ALJ's step-five determination is not supported by substantial evidence because of errors in the ALJ's RFC finding. (Pl.'s Br. [#12] at 10.) After careful consideration, the Court concludes that the ALJ committed harmful error by failing to properly analyze Listing 1.04A. In addition, the Court concludes that the ALJ's RFC finding is not supported by substantial evidence and that further record development is required.

**A.      The ALJ committed reversible legal error by failing to properly analyze Listing 1.04A.**

Plaintiff claims that the ALJ failed to properly analyze Listing 1.04A. Specifically, Plaintiff maintains that the ALJ erred by offering only a perfunctory analysis of Listing 1.04A and that the medical evidence of record indicates that his impairments met the criteria of Listing 1.04A. The Court agrees with Plaintiff that the ALJ failed to properly evaluate whether Plaintiff's impairments satisfied Listing 1.04A. Therefore, the Court will remand this case to the Commissioner so that she can properly analyze Listing 1.04A.

   1.      The ALJ erred when she found, without any discussion of the medical evidence in the record, that Plaintiff's spinal disorders did not meet the requirements of Listing 1.04A.

At step three of the five-step sequential evaluation process, the ALJ must determine whether the claimant's impairment(s) is of a severity to meet or medically equal the criteria of an impairment found in the Listings. *See* 20 C.F.R. § 404.1520(a)(4)(iii). The Listings consist of

Part A (primarily for adults) and Part B (for children only) and describe impairments that the Administration considers severe enough to prevent a claimant from doing any gainful activity, regardless of his age, education, or work experience. *Id.* § 404.1525(a). A claimant whose impairment(s) meets or medically equals a listed impairment "will be considered disabled without the need to consider vocational factors." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990)); *see also* 20 C.F.R. § 404.1520(d).

For this reason, the criteria in the Listings are "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). The medical criteria defining the listed impairments have been deliberately set at a higher level of severity than the statutory standard for receiving benefits because the Listings "were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).

Each listing specifies the objective medical and other findings needed to satisfy the criteria of that particular listing. *See* 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). A diagnosis, by itself, is insufficient to establish that a claimant's impairment (or combination of impairments) meets or medically equals the criteria of a listing. *See id.* § 404.1525(d). Rather, a claimant's impairment or combination of impairments meets the requirements of a listing only "when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction," *id.* §§ 404.1525(c)(3), 416.925(c)(3), and it is expected to result in death or it has lasted or is expected to last for a continuous period of at least twelve months, *see id.* §§ 404.1509, 416.909. An impairment or combination of impairments that manifests only some of a listing's criteria, no matter how severely, does not qualify; if a claimant's impairment (or combination of impairments) does not satisfy every component, it does not meet the listing. *See*

*id.* § 404.1525(c)(3). At step three, the burden of establishing that an impairment or combination of impairments is of listing-level severity rests with the claimant. *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).

The listing at issue here, Listing 1.04A, applies to disorders of the spine. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. It requires a spinal disorder resulting in compromise of a nerve root or the spinal cord accompanied by evidence of nerve root compression characterized by four specified symptoms or medical criteria. Specifically, Listing 1.04A states:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .[2]

*Id.*

Additionally, the claimant must demonstrate the required loss of function for a musculoskeletal impairment, which requires him to demonstrate either "the inability to ambulate effectively on a sustained basis for any reason . . . or the inability to perform fine and gross movements effectively on a sustained basis for any reason . . . ." *Id.* § 1.00(B)(2)(a). Finally, for any disability determination to be made, even under the Listings, the disabling condition must be found to last, or be expected to last, for a continuous period of not less than twelve months. *See*

---

[2] Alternatively, Listing 1.04A covers disorders of the spine resulting in compromise of a nerve root or the spinal cord with (B) spinal arachnoiditis resulting in the need for changes in position or posture more than once every two hours or (C) lumbar spinal stenosis resulting in pseudoclaudication, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively. *See id.*

42 U.S.C. § 423(d)(1)(A); *Pinon v. Colvin*, No. EP-12-CV-66-MAT, 2015 WL 1402059, at *4 (W.D. Tex. Mar. 24, 2015).

In addressing whether Plaintiff's impairments met the requirements of Listing 1.04A, the ALJ wrote: "[T]here is no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in an inability to ambulate. Consequently, the claimant's degenerative disc disease of the cervical and lumbar spine are not of listing-level severity." (Tr. 21.) Citing *Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007), Plaintiff contends that the ALJ's analysis of Listing 1.04A is conclusory and not supported by substantial evidence and that his medical records compel a finding that his musculoskeletal impairments met the criteria of Listing 1.04A.

At step three of the five-step sequential evaluation process, the ALJ was required to discuss the evidence offered in support of Plaintiff's claim for disability and to explain why she found Plaintiff not to be disabled at that step. *See Audler*, 501 F.3d at 448. In *Audler*, the Fifth Circuit held that the ALJ committed legal error when she "summarily concluded" that the claimant's impairments, while severe, were not severe enough to meet or medically equal the criteria of a listing. *Id.* "Such a bare conclusion is beyond meaningful judicial review." *Id.* (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)). The Fifth Circuit, however, clarified that "the ALJ is not always required to do an exhaustive point-by-point discussion" and that any error in failing to state any reason for an adverse determination at step three is subject to harmless-error analysis. *Id.*

This case is unlike *Audler*. In that case, the ALJ did not identify the listed impairment for which Audler's symptoms failed to qualify and failed to provide any explanation as to how she reached the conclusion that Audler's symptoms were insufficiently severe to meet any listed impairment. *See id.* at 448. Here, the ALJ not only identified Listing 1.04, but also noted the

specific impairment under consideration (*i.e.*, degenerative disc disease of the cervical and lumbar spine), stated that there was "no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in an inability to ambulate," and, on this basis, concluded that the criteria of Listing 1.04 was not met. (Tr. 21.) The ALJ also discussed the evidence, or lack thereof, in other sections of her decision. (Tr. 24–27.) Accordingly, the undersigned does not find the ALJ's conclusions to be beyond meaningful judicial review.

This, however, does not end the matter. Although the ALJ pointed to a lack of evidence and provided reasons in order to permit meaningful judicial review, as required by *Audler*, the ALJ's analysis does not adequately support her conclusion that the criteria of Listing 1.04 was not met. That is because the ALJ's assertion that "there is no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in an inability to ambulate," by itself, is insufficient to support a finding that Plaintiff's spinal disorders did not meet the requirements of Listing 1.04A. (Tr. 21.)

Listing 1.04 provides:

1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

Or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

Or

C.    Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. Furthermore, to qualify under this listing, a claimant must also demonstrate the requisite functional loss, which is defined as either "the inability to ambulate effectively on a sustained basis" or "the inability to perform fine and gross movements effectively on a sustained basis." *Id.* § 1.00(B)(2)(a).

Plaintiff has cited evidence that supports his argument that the requirements of each of the criteria of Listing 1.04A are satisfied. That evidence is as follows. Plaintiff sustained serious injuries in a motor vehicle accident that occurred on October 15, 2015. (Tr. 24.) In a radiology report, dated January 27, 2016, Douglas Smith, M.D., stated that an MRI scan of the cervical spine showed an angular kyphosis in the mid-cervical spine, a posterior annular disc bulge at C2-C3, a broad-based disc bulge at C4-C5, and a broad-based subligamentous disc herniation at C5-C6 with impression on the thecal sac. (Tr. 524.) An MRI scan of the lumbar spine showed a posterior annular disc bulge at L3-L4, a broad-based disc bulge and small bilateral facet joint effusions at L4-L5, and a left-sided prominent broad-based disc bulge and moderate-sized bilateral facet joint effusions at L5-S1. (Tr. 521.)

On June 10, 2016, Plaintiff had a pain management consultation with George L. Lilly, M.D. Upon examination, Dr. Lilly made the following observations about Plaintiff's condition

Cervical spine – Palpation of the cervical spine is tender over the C5-6 spinous process and right splenius capitis and right upper trapezius myofascial area. Spurling's test does increase his neck pain but no radiation of symptoms.[3]

---

[3] A positive Spurling's sign suggests the presence of a cervical nerve root disorder. *See Stedman's Medical Dictionary* 1961 (28th ed. 20006) (defining "Spurling test" as an "evaluation for cervical nerve root impingement in which the patient extends the neck and rotates and

Palpation of his infraspinatus muscle does cause severe jump sign pain. He has pain with flexion of his neck also. Motor testing shows extreme 3/5 weakness in his right hand grip, biceps and triceps as compared to 5/5 on the left. Neurosensory testing shows deficits in the right forearm C6, C7 and C8 dermatomes to pinwheel exam as compared to the left. Reflexes are decreased in his right biceps, triceps and brachial radialis at 1+ as compared to 2+ in the same reflexes on the left. He actually has no sensation over his C6-C8 dermatomes on the volar aspect of his right forearm to pinwheel exam.

. . . .

Lumbar spine – His is completely unable to bend any more than 20 degrees before having severe pain with flexion. In the sitting position, straight leg raise exams are positive on the right for nerve tension pain and negative on the left.[4] Motor and reflex testing in the lower extremities is symmetric without deficits. Reflex testing is symmetric also. Palpation of his L4-5 spinous processes are tender as are the right iliolumbar musculature.

(Tr. 592–93.) Plaintiff had a pain management follow-up visit with Michael E. Kruczek, M.D.,

on July 13, 2016. Dr. Kruczek reported as follows:

On physical exam there is pain to palpation C5-6 right greater than left paraspinous muscle spasm. He has severe right arm weakness 1 over 5 on the right. Hand grip is 5 over 5 on the left. He is right handed and he has complete numbness to neurosensory pinwheel testing in the C4, 5 and 6 dermatomes on the right compared to the left. He has 0 reflexes on biceps and triceps, 2+ on the left.

The right shoulder he is only able to abduct to 50 degrees and then stops secondary to pain, with limited internal and external rotation.

In the lumbar spine there is pain to palpation at L4-5, L5-S1 right greater than left paraspinous muscle spasm, straight leg raise is positive on the right at 40 degrees with referral of pain to the right calf. Deep tendon reflexes are 1+ at the right knee and ankle, 2+ at the left knee and ankle with decreased sensation to neurosensory pinwheel testing in the right L4, L5 and S1 dermatomes compared

---

laterally bends the head toward the symptomatic side; an axial compression force is then applied by the examiner through the top of the patient's head; the test is considered positive when the maneuver elicits the typical radicular arm pain").

[4] A positive straight-leg raising test or Lasègue's sign indicates nerve root compression or impingement. *See Stedman's Medical Dictionary* 1962 (28th ed. 2006) (defining "straight-leg raising test" as "passive dorsiflexion of the foot in the supine patient with the knee and hip extended; back pain with this indicates nerve root compression or impingement").

to the left. Dorsiflexion and plantar flexion of the great toes is 4 over 5 on the right, 5 over 5 on the left.

In summary he has a severe radiculopathy in the right upper extremity. He will require surgical evaluation of the seriously injured cervical spine at this point.

(Tr. 587.) Finally, Plaintiff had an initial office consultation with Stephen E. Earle, M.D., on September 20, 2016. Dr. Earle examined Plaintiff's cervical and lumbar spine and concluded as follows:

His diagnosis is one of traumatic internal disc disruption syndrome with discogenic pain, stenosis, and instability of the cervical spine C2-C3, C4-C5, and C5-C6, traumatic internal disc disruption syndrome with discogenic pain, stenosis, and instability of the lumbar spine L3-L4, L4-L5, and L5-S1, as well as traumatic brain injury with left hemispheric injury.

(Tr. 563.) Regarding the cervical spine, Dr. Earle observed, among other things, paresthesias at C5, C6, C7, C8 on the right side, atrophy on the right side, a positive cervical compression test, and a positive Spurling's and Hoffman's sign on the right.[5] (Tr. 571.) Regarding the lumbar spine, Dr. Earle found, among other things, a positive Spurling's sign and "flip test" on the right.[6] (Tr. 571.)

Plaintiff claims that this medical evidence of record supports a finding of nerve root compression under Listing 1.04A. The ALJ did not discuss this evidence or explain why it does

---

[5] A Hoffman's sign is a test that doctors use to examine the reflexes of the upper extremities. A positive Hoffman's sign may indicate that a patient has a neurological or nervous system condition that affects the cervical spine or brain. *See Stedman's Medical Dictionary* 1769 (28th ed. 2006) (defining "Hoffman's sign" as "(1) in latent tetany mild mechanical stimulation of the trigeminal nerve causes severe pain; (2) flexion of the terminal phalanx of the thumb and of the second and third phalanges of one or more of the fingers when the volar surface of the terminal phalanx of the fingers is flicked").

[6] The "flip test" involves "[p]assive extension of the knee with the patient in the erect position and the hip flexed [which] is reported to cause a sudden falling or flipping back of the trunk" and is "a useful check of nerve root tension . . . for patients with supine [straight leg raise] below 45 degrees." Bruce Summers, Viren Mishra & J. Mary Jones, *The Flip Test: A Reappraisal*, Nat'l Ctr. for Biotechnology Info. (July 1, 2009), https://www.ncbi.nlm.nih.gov/pubmed/19564769.

not support such a finding. Rather, the ALJ simply asserted that "there is no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in an inability to ambulate." (Tr. 21.) This statement, even if true, is, without more, insufficient to support a finding that Plaintiff's spinal disorders did not meet the requirements of Listing 1.04A because the Listing encompasses more than just nerve root compression that results in an inability to ambulate, spinal arachnoiditis that results in an inability to ambulate, and lumbar spinal stenosis that results in an inability to ambulate.

Listing 1.04A requires compromise of a nerve root or spinal cord, as well as "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. Noticeably absent from this definition is the limiting phrase "inability to ambulate." To be sure, Listing 1.04C requires a showing of an "inability to ambulate effectively." *See id.* § 1.04C. But the listing at issue here, Listing 1.04A, contains no such requirement. Furthermore, to demonstrate the requisite loss of function for a musculoskeletal impairment, Plaintiff must demonstrate either "the inability to ambulate effectively on a sustained basis" or "the inability to perform fine and gross movements effectively on a sustained basis." *Id.* § 1.00(B)(2)(a); *see also Audler*, 501 F.3d at 449. That "there is no evidence of nerve root compression . . . resulting in an inability to ambulate," (Tr. 21.), does not necessarily mean that Plaintiff is unable "to ambulate *effectively on a sustained basis*," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(a) (emphasis added). And, as explained below, substantial evidence does not support the ALJ's finding, with respect to Listing 1.02, that Plaintiff "maintains the ability to ambulate effectively." (Tr. 21.)

In sum, Plaintiff has cited evidence that supports his contention that the requirements of each of the criteria of Listing 1.04A are satisfied. The ALJ's cursory analysis, by contrast, does not permit the Court to understand how she assessed this evidence. In the absence of any analysis by the ALJ, the undersigned is unable to understand how, or whether, she evaluated this evidence. Accordingly, the ALJ's failure to consider all of the relevant medical evidence of record or properly analyze Listing 1.04A at step three of the five-step sequential evaluation process constitutes legal error and, for the reasons stated below, requires remand.

2.      The ALJ's failure to properly evaluate whether Plaintiff's impairments met or equaled the criteria of Listing 1.04A was not harmless and requires remand.

Not every error warrants reversal or remand. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). "Procedural perfection in administrative proceedings is not required," and this Court will vacate a judgment only if "the substantial rights of a party have been affected." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988) (per curiam)); *see also* Fed. R. Civ. P. 61 ("Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."). Procedural improprieties alleged by a Social Security disability claimant "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

Here, for the reasons mentioned above, the ALJ's step-three analysis does not adequately support her conclusion that the criteria of Listing 1.04 was not met. For its part, Defendant claims that Plaintiff has failed to fulfil his step-three burden of demonstrating, through medical

evidence, that his impairments met or equaled all of the specified medical criteria contained in Listing 1.04A because Plaintiff has not demonstrated a functional loss.

The Fifth Circuit has held that a claimant must demonstrate functional loss as described in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2) to meet or equal Listing 1.04A. *See Audler*, 501 F.3d at 448–49. In order to meet or equal Listing 1.04A, then, Plaintiff must show not only the existence of a spinal disorder resulting in compromise of a nerve root or the spinal cord accompanied by evidence of nerve root compression characterized by four specified symptoms or medical criteria, but also the requisite functional loss.

To demonstrate the required "functional loss" for a musculoskeletal impairment, a claimant must demonstrate either "the inability to ambulate effectively on a sustained basis . . . or the inability to perform fine and gross movements effectively on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(a). "Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." *Id.* § 1.00(B)(2)(b)(1). To ambulate effectively, a claimant "must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." *Id.* § 1.00(B)(2)(b)(2). In addition, the claimant "must have the ability to travel without companion assistance to and from a place of employment or school." *Id.* Section 1.00(B)(2) contains a non-exhaustive list of examples of ineffective ambulation, which include "the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, . . . and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." *Id.*

"Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." *Id.* § 1.00(B)(2)(c). Examples of such an inability include, but are not limited to, "the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level." *Id.*

In discussing Listing 1.02, the ALJ stated that:

> [T]here is no evidence of the claimant using a walker, two crutches, or two canes to walk. Thus, he maintains the ability to ambulate effectively. In addition, the claimant maintains the ability to perform fine and gross movements effectively because there is no evidence of an extreme loss of function of both upper extremities.

(Tr. 21.) Substantial evidence does not support this conclusion. Specifically, while the ALJ's finding that Plaintiff could perform fine and gross movements effectively is substantially justified,[7] substantial evidence does not support the ALJ's finding that Plaintiff could ambulate effectively and, thus, did not suffer a "loss of function" as that phrase is defined in § 1.00(B)(2).

At the hearing, Plaintiff testified that he goes for a walk with his wife when she comes home from work; that he uses a walker to move around; that he has fallen down multiple times; that he usually holds on to his wife when walking in public; that he is unable to walk more than one hundred yards at a time; and that he could stand for no more than forty-five minutes to one

---

[7] The ALJ specifically stated that "the claimant described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. He prepares simple meals such as sandwiches, noodles, salad, and rice. He helps with household chores such as sweeping, mopping, taking out the trash, cleaning the countertops, dusting, and vacuuming. He is able to go out alone. He knows how to count change. The claimant attends support meetings and church. These robust activities of daily living suggest the claimant's limitations are not disabling in nature." (Tr. 27 (citations omitted).) Based on these observations, which are supported by the medical evidence of record, substantial evidence supports the ALJ's finding that Plaintiff is able to perform fine and gross movements effectively.

hour in the course of an eight-hour workday. (Tr. 48–49, 54.) However, the ALJ believed that Plaintiff's description of his symptoms and limitations was "inconsistent and unpersuasive" and that his testimony was "not entirely consistent" with the evidence in the record. (Tr. 26.) The ALJ also found that there was no evidence that a walker was prescribed or recommended by an acceptable medical source. (Tr. 26.)

"While an ALJ's assessment of a claimant's credibility is accorded great deference," the record in this case does not contain substantial evidence to support the ALJ's finding that Plaintiff could ambulate effectively. *Newton*, F.3d at 459. In finding that Plaintiff "maintains the ability to ambulate effectively," the ALJ relied solely on the lack of evidence that Plaintiff used a walker, two crutches, or two canes to walk. (Tr. 21.) However, the inability to walk without the use of a walker, two crutches, or two canes is but one example of ineffective ambulation. That is, § 1.00(B)(2) contains a non-exhaustive list of examples of ineffective ambulation, one of which is the inability to walk without the use of a walker, two crutches, or two canes. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(2). "Although the ALJ is not always required to do an exhaustive point-by-point discussion," *Audler*, 501 F.3d at 448, here, the ALJ offered nothing to support her conclusion at this step other than her assertion that there was no evidence that Plaintiff used a walker, two crutches, or two canes to walk. (Tr. 21.) This assertion, by itself, is insufficient to conclude that Plaintiff could ambulate effectively.

The ALJ's apparent failure to properly analyze Listing 1.04A was an error that deprived Plaintiff of a fair evaluation of his impairments. Accordingly, Plaintiff was prejudiced and the error was not harmless.

In its brief, Defendant emphasizes that the ALJ stated that "[a]t times, [Plaintiff] exhibited a normal gait, upper and low extremity strength, and lower extremity range of motion."

(Tr. 24.)  This argument is not persuasive.  To demonstrate the required "functional loss" for a spinal disorder, a claimant need only demonstrate "the inability to ambulate effectively *on a sustained basis* for any reason, including pain associated with the underlying musculoskeletal impairment . . . ."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(a) (emphasis added).  The fact that, *at times*, Plaintiff exhibited a normal gait, upper and lower extremity strength, and lower extremity range of motion does not preclude a finding that Plaintiff is unable to ambulate effectively *on a sustained basis*.  To ambulate effectively, a claimant "must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living."  *Id.* § 1.00(B)(2)(b)(2).  It is, of course, possible for an individual to, at times, exhibit a normal gait and yet be unable to sustain a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.

Defendant also maintains that Plaintiff has not established the presence of the required abnormal physical findings "by a record of ongoing management and evaluation," as required by 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00D.  That section provides that "[b]ecause abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation."  *Id.*  As a preliminary matter, the undersigned notes that Defendant cites no authority for its contention that the January 27, 2016 radiology report, the June 10, 2016 pain management consultation with Dr. Lilly, the July 13, 2016 pain management follow-up visit with Dr. Kruczek, and the September 20, 2016 initial office consultation with Dr. Earle do not constitute "a record of ongoing management and evaluation." *Id.*  Furthermore, under well-established principles of administrative law, this Court may judge the propriety of the ALJ's decision only on the grounds invoked by the ALJ.  *See Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 94 (1943) (establishing the proposition that an agency

may not defend an administrative decision on new grounds not set forth by the agency in its original decision). The Fifth Circuit has clarified that "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 455; *see also Copeland v. Colvin*, 771 F.3d 920, 927 (5th Cir. 2014) (remanding the Commissioner's denial of benefits because the Commissioner did not rely on the rationale put forth by the agency on appeal); *Cole ex rel. Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) ("It is well-established that we may only affirm the Commissioner's decision on the grounds which he stated for doing so."). Simply put, the ALJ did not rely on this rationale in her decision, so the Commissioner cannot now rely on it.

In sum, the undersigned agrees with Plaintiff that the ALJ's step-three determination misrepresented the medical evidence of record; that this constituted error; and that the error was not harmless. Accordingly, a remand is necessary so that the ALJ can properly evaluate whether Plaintiff's impairments met the criteria of Listing 1.04A.

**B.     The ALJ erred in failing to fully develop the record.**

Plaintiff also claims that the ALJ erred in failing to fully develop the record. Specifically, Plaintiff maintains that substantial evidence does not support the ALJ's finding that Plaintiff "has the residual functional capacity to perform medium work."[8]  (Tr. 23.)  Plaintiff argues that the RCF finding is not supported by substantial evidence because it is supported not

---

[8] The ALJ found that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) with the following limitations: "Claimant can lift and carry 50 pounds occasionally and 25 pounds frequently. He can stand and walk 6 hours in a given workday. He can sit 6 hours in a given workday. His work should not involve ladders, unprotected heights, or machinery with exposed dangerous parts such as shop or welding equipment. He can understand, remember, and carry out detailed instructions of specific vocational preparation (SVP) 3 limit (low semiskilled). He can interact appropriately with the general public. He can accept instructions and criticism from a boss adequately. Claimant can deal with changes in a rather structured, routine work environment. He can control behavioral extremes in a workplace." (Tr. 23.)

by objective medical findings but by the ALJ's lay opinion about the medical evidence of record. The undersigned agrees.

"The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)). "The ALJ is responsible for determining an applicant's residual functional capacity." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). However, the ALJ's RFC determination must be supported by substantial evidence in the record. *See id.*

"It is the duty of the ALJ to fully and fairly develop the facts relative to a claim for benefits." *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989). "When he fails in that duty, he does not have before him sufficient facts on which to make an informed decision. Consequently, his decision is not supported by substantial evidence." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984); *see also Ripley*, 67 F.3d at 557 ("The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits. If the ALJ does not satisfy his duty, his decision is not substantially justified.").

This duty to fully develop the record, however, must be balanced against the fact that the claimant bears the burden of proof through the first four steps of the five-step sequential evaluation process. *See Audler*, 501 F.3d at 448; *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). Additionally, if sufficient medical or other evidence is not provided by the claimant, the ALJ is required to decide whether the claimant is disabled based on the information available. *See Pearson v. Bowen*, 866 F.2d 809, 812 (5th Cir. 1989); *see also* 20 C.F.R. § 404.1516 ("If you do not give us the medical and other evidence that we need and request, we will have to make a decision based on information available in your case.").

Finally, the ALJ is not permitted to draw his own medical conclusions from some of the data, without relying on a medical expert's help. *See Frank*, 326 F.3d at 622. "Usually, the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing." *Ripley*, 67 F.3d at 557. However, the absence of such a statement does not, in itself, make the record incomplete; rather, "the ALJ's need to contact a medical source arises only when the available evidence is inadequate to determine if there is a disability." *Cornett v. Astrue*, 261 F. App'x 644, 649 (5th Cir. 2008).

In *Ripley*, the Fifth Circuit held that the ALJ's conclusion that the claimant was capable of performing sedentary work was not supported by substantial evidence because there was no medical statement from a treating physician regarding the effects of the claimant's back condition upon his ability to work. *See Ripley*, 67 F.3d at 557–58.

This case is analogous to *Ripley*. The case record includes objective medical evidence indicating that Plaintiff suffers from spinal disorders. The relevant medical evidence of record includes a January 27, 2016 radiology report by Dr. Smith and reports from a June 10, 2016 pain management consultation with Dr. Lilly, a July 13, 2016 pain management follow-up visit with Dr. Kruczek, and a September 20, 2016 initial office consultation with Dr. Earle. What the record does not clearly establish is the effect Plaintiff's condition had on his ability to work.[9] To elaborate, although the reports by Dr. Smith, Dr. Lilly, Dr. Kruczek, and Dr. Earle document that

---

[9] The State agency's medical consultants, Amita Hedge, M.D., and Kavitha Reddy, M.D., opined in May and October of 2015 that Plaintiff's physical impairments were not severe. (Tr. 25.) However, as the ALJ pointed out, Dr. Hedge and Dr. Reddy rendered their opinions prior to Plaintiff's October 15, 2015 motor vehicle accident and, therefore, did not have an opportunity to review and consider all of the medical records that were available to the ALJ at the hearing. (Tr. 25.) Nevertheless, the ALJ, based on Dr. Hedge's and Dr. Reddy's opinions, limited Plaintiff "to medium work, adding postural and environmental limitations." (Tr. 25.)

Plaintiff suffers from spinal disorders, they do not discuss the effects of Plaintiff's spinal condition upon his ability to work.

Yet, without statements from qualified medical experts, no conclusion can be reached concerning the types of work that Plaintiff is still capable of performing. The only evidence regarding Plaintiff's physical ability to work came from his own testimony, which the ALJ discounted, medical records that predated the October 15, 2015 accident, and an October 27, 2017, report from Deborah Jalbert, PA-C, treating provider. In that report, Jalbert opined that Plaintiff's "episodic flare-ups prevent him from participating in normal daily activities." (Tr. 25.) Jalbert further opined that Plaintiff "would need reduced number of hours at work due to medical necessity."[10] (Tr. 25.) However, the ALJ afforded Ms. Jalbert's opinion "[l]ittle weight" because "her opinion suggests claimant is unable to work full-time, which is not supported by the medical record as a whole." (Tr. 26.) But Ms. Jalbert's opinions are the only comments from an acceptable medical source on Plaintiff's physical ability to work following the October 15, 2015 motor vehicle accident.

For these reasons, the record is devoid of a medical source statement that supports the ALJ's RFC finding. Instead, the ALJ impermissibly relied on his own medical opinions as to the limitations presented by Plaintiff's spinal disorders. Under these circumstances, the undersigned cannot conclude that the ALJ's RFC assessment is supported by substantial evidence. Therefore, on remand, the ALJ is instructed to obtain a statement from an acceptable medical source regarding the effects of Plaintiff's spinal disorders upon his ability to work. *See Ripley*, 67 F.3d at 557–58 (remanding the case to the Commissioner with instructions to obtain a report from a

---

[10] In February 2016, Jalbert further opined that that Plaintiff has "marked" limitation in understanding, memory, sustained concentration, persistence, and adaption, and "moderate" limitation in social interaction. (Tr. 410–13.)

treating physician regarding the effects of the claimant's back condition upon his ability to work); *see also Williams v. Astrue*, 355 F. App'x 828, 832 (5th Cir. 2009) (remanding because the ALJ impermissibly relied on his own medical opinions as to the limitations presented by the claimant's "mild to moderate stenosis" and "posterior spurring" to develop his RFC finding); *Butler v. Barnhart*, 99 F. App'x 559, 560 (5th Cir. 2004) (concluding that the ALJ's RFC finding was not supported by substantial evidence because there was no medical opinion or evidence establishing that the claimant could perform the requisite exertional demands).[11]

## V.  Conclusion

Based on the foregoing, the Court finds that the ALJ committed reversible error in failing to develop the record to properly determine Plaintiff's RFC and in analyzing Listing 1.04A. Furthermore, the Court finds that these errors are grounds for remand to further develop the record and issue a new decision.  Accordingly,

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding that Plaintiff is not disabled is **VACATED.**

**IT IS FURTHER ORDERED** that this case is **REMANDED** for further administrative proceedings consistent with this opinion.

**IT IS SO ORDERED.**

SIGNED this 29th day of March, 2019.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE

---

[11] Plaintiff also contends that the ALJ's analysis at step five of the five-step sequential evaluation process was not substantially justified.  However, as the ALJ's RFC finding is not supported by substantial evidence, the Court need not, at this time, address the merits of this argument.